# CHESAPEAKE STEAMSHIP COMPANY *vs.* THE MERCHANTS NATIONAL BANK.

*Bills of lading—Assignment for value—Liability of Carrier, who Delivers Goods Without Requiring Surrender of Bills of Lading—Action of Tort.*

One M. was the holder of certain non-negotiable bills of lading for cotton issued by the defendant company as carrier, the bills providing that they must be surrendered before the goods would be delivered, with the endorsement of the consignees. M. contrived to get possession of the cotton without surrendering the bills, which had been endorsed to him, and afterwards he assigned them to the plaintiff as collateral security for loans then made to him, or in exchange for other bills of lading or warehouse receipts for other loans already made. *Held,* that since the negligence of the carrier induced the plaintiff to make advances upon the faith of the bills of lading, the plaintiff is entitled to recover the amount of his loss.

When a party in consideration of the assignment of a bill of lading surrenders other bills or commercial instruments held by him as collateral security for a loan, he is an assignee for value of such bill of lading.

When a bill of lading provides that it must be surrendered before delivery of the goods, the carrier owes a duty to all persons dealing with the bill not to deliver the goods without requiring its surrender ; and if by reason of a breach of this duty, a party is induced to take a bill of lading of goods already delivered, he is entitled to maintain an action of tort to recover the damage thereby caused. Such action lies in the name of the assignee of the bill and is not an action *ex contractu* or dependent upon the negotiability of the bill of lading.*

Appeal from the Superior Court of Baltimore City (Baer, J.)

---

*See Act of 1902, chap. 125, providing that order bills of lading shall be negotiable instruments and must be surrendered or cancelled before delivery of the goods.

The cause was argued before McSherry, C. J., Page, Boyd, Pearce, Schmucker, Jones and Burke, JJ.

*Bernard Carter* and *John Prentiss Poe* (with whom were *Foster & Foster* on the brief) for the appellant.

*Arthur Geo. Brown* and *Edward Duffy* (with whom were *J. S. Lemmon, Hugh L. Bond, Jr.,* and *Daniel H. Hayne* on the brief) for the appellee.

Page, J., delivered the opinion of the Court.

The facts in this case do not materially differ from those in the preceding case between the same parties ; except the bills of lading in this case which were transferred to the appellee by Messersmith have not been altered.    The following state-ment is sufficient to show how the points specially involved, arise.    The four bills of lading were issued to the order of McFadden & Co.    Each of the bills covered 100 bales of cotton.  ·Three were dated Mobile, 18th Feby. 1901, and one from the same place Jany. 19th, 1901, each to the order of Mc-Fadden, notify Messersmith & Co. in Baltimore, all properly endorsed to the latter, who paid the former therefor, 6th and 14th Feby. 1902.    Thereafter all the cotton represented by them was delivered to Messersmith by the appellant, without however requiring the production or surrender of the bills. The bills were all order bills of lading ; and by the terms thereof, the appellant should have required the surrender or production of them, at the time Messersmith received the cotton.

Subsequently Messersmith, in consideration of loans and advances previously made transferred the bills to the appellee, who by virtue of special agreement held the same as collat-eral for the payment of any loan or other indebtedness for any liability then existing or thereafter to be contracted.    Messer-smith having made default, this suit was brought against the carrier, and judgment being for the appellee, this appeal was taken.

CHESAPEAKE S. S. CO. vs. MERCHANTS BK.   591

Md.]           ·           Opinion of the Court.

There is but one exception, and that is to the disposition of the prayers offered by the respective parties.   Inasmuch as the rulings upon the prayers will cover the whole case, we need only examine the instructions granted or refused, as set forth in the exception.   The Court below granted the three prayers offered by the plaintiff, and refused the appellant's third, fourth, fifth, sixth, seventh, eighth and ninth.

The declaration contained three counts.   The first two are in trover; the third is in case, wherein the appellee's claim is for damages for the alleged culpable neglect of the appellant in delivering the cotton, without requiring the production and surrender of the bills of lading, &c.   The judgment was for the plaintiff and the defendant has appealed.

The Court excluded the first and second counts of the *narr.* from the case and these are not therefore to be considered on this appeal.

The bills of lading are similar to those in the preceding case, containing the same terms and conditions.

The first prayer of the appellee is to the effect, that the appellee is entitled to recover if the appellee received the four bills of lading from Messersmith, "as collateral security for loans made by the appellee to Messesmith at the time of the transfer of the bills, or in exchange for other bills of lading or warehouse receipts, for other loans already made, and that the money so owed has never been paid, and that the appellee presented to the appellants the bills of lading on the 14th November, 1901, &c., and demanded the cotton from them, but the appellant failed to deliver the same," even though the appellant had delivered the cotton, while in possession of the bills, provided at the time of such delivery the appellant failed to take up said bills, but left them uncancelled in Messersmith's possession.   We have already said in the preceding case that in a case like this if the carrier delivered the goods without requiring the surrender or cancellation of the bills of lading, it would be guilty of culpable negligence, for which it would be liable in a proper case.   And this doctrine we think has been recognized in the case of the *Bank of Bristol* v. *B.*

*& O. R. R.,* 99 Md. 681, where this Court dealing with a non-negotiable bill of lading, in a case where it was alleged the real owner put it in the power of the consignee, to deal with the property as his own, said, that if the bank acted in good faith in discounting the draft for the consignee and accepting the bill of lading as collateral security, and that if by putting it in the power of the consignee to deal with the property as his own enabled him to mislead the bank, and if in consequence of their confidence in him and the credit of one day which they gave him, a loss must fall either upon the bank or upon them (Atkin Bros.) then, wholly aside from all questions respecting the negotiability of the bill of lading, the doctrine imposing the loss upon the persons by whose carelessness DeCamp was enabled to represent to the bank that the property was his applies, and that the loss occasioned by such misrepresentation must fall upon them." The appellees prayers also required that the jury must find that the bank received the bills of lading as collateral security, for loans made by it to Messersmith at the time the bills were received, or in exchange for other bills of lading or warehouse receipts then held by the bank as collateral security for loans already made," &c. It is contended that these instructions are bad, in that they do not, as they ought to have done, require the jury to find there was a present reciprocal consideration passing from the bank to Messersmith. But we cannot agree to this. The prayers require them to find that the consideration were loans made at the time of the reception of the bills, or (by the second prayer) in exchange for other bills, or in substitution for other bills held by the bank as collateral for other loans previously made.

. It appears in the evidence, that on the 17th July, 1900, it was agreed between the parties that securities deposited by Messersmith as collateral for any loan or indebtedness to the bank, should also be held by the bank for any and all other liabilities of Messersmith, &c. Mr. Ingle, the cashier, was not clear that fresh loans were made to Messersmith, but stated "with absolute definiteness that on any particular day on which

he deposited those bills, we gave him value in the shape either of a loan or its equivalent," meaning as the witness said, "another bill of lading for that which he desired to withdraw." Thus it appears that the consideration passing at the time, was either fresh loans or other bills of lading.   Messersmith testified he "substituted the bills for other bills or warehouse receipts."   It is also shown that when Messersmith took out a bill of lading if it was identified on the note, they would have "to make out a new note or have the consent to the alteration of the note according to law."  · So that it seems to be clear that the course of business was when Messersmith desired to take out the property, he would receive the bill of lading therefore from the bank, and either substitute new bill therefor or other security, if no cash was paid; and that this required new notes to be given by him or by consent the alteration of the old note.   In *Goodman* v. *Simmons*, 20 Howard, 346, the Court said: "The surrender of other instruments, although held as collateral security is also a good consideration—and is not open to dispute."   It is true it does not appear what the bills of lading were, which Messersmith received in making the substitution, but the evidence in the case shows that they were bills upon which loans had been made, and were therefore of some value.

Some question was made, whether the appellee could maintain this suit in its own name.   The first and second counts of the declaration, being out of the case, the action as it now stands is purely in tort, to recover for losses occasioned by the culpable negligence of the appellant.   It does not seem to be material therefore to inquire whether the appellee can or cannot maintain any kind of an action *ex contractu*, but whether there was a breach of duty on the part of the appellant, in not doing some act, which as affecting the appellee it was under a legal obligation to do, whereby consequential damage ensued. This is the effect of the rulings in *P., W. & B. R. R.* v. *Constable*, 39 Md. 149, where this Court adopting the principles laid down in *Burnett* v. *Lynch*, 5 Barn. & Cress. 589, said "where from a given state of facts, the law raises a legal obli-

gation to do a particular act and there is a breach of that obligation and a consequential damage, there, * * * an action on the case founded in tort is the more proper form of action, in which the plaintiff in his declaration states the fact out of which the legal obligation arises, the obligation itself, the breach of and the damage resulting from that breach." We have held in the preceding case that the obligation of the appellant to require the surrender of the bills of lading, when the goods are delivered, was a provision intended for the protection of all who dealt with the goods. To deliver the goods without such surrender was therefore the equivalent of a declaration that the goods were still in the carrier's possession. If therefore it had in fact parted with the possession without such requirement, there was a breach of its duty to a party who had a right to rely and did rely upon the implied assurance; and such party can bring a suit in his own name to recover damages. This question does not depend upon the negotiability of the bill, nor upon whether the party injured may bring an action *ex contractu* for his damages. It is not affected by the Act of 1902, ch. 125 (which not being retroactive cannot be applicable to this case), but upon the general law of torts, whereby a person may bring his action, for injuries occasioned by the culpable breach of an obligation due to him on the part of a defendant.

The appellees prayers were therefore properly granted. There was no error in refusing the third, fourth, fifth, sixth, seventh, eighth and ninth of the appellant for reasons already stated.

The judgment will therefore be affirmed.

*Judgment affirmed.*